IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CLF 007, an individual;<br>CLF 008, an individual,<br><br>        Plaintiffs,<br>   v.<br><br>COOPERSURGICAL, INC.<br><br>        Defendant,<br>   v.<br><br>EMBRYOTECH LABORATORIES INC.,<br>A Hamilton Thorne Company, a Delaware corporation; and<br><br>HAMILTON THORNE LTD., a Canadian corporation,<br><br>        Third-Party Defendants. | Civ. No. 6:24-cv-00990-AA<br><br>**OPINION & ORDER** |

AIKEN, District Judge:

Before the Court are Motions to Dismiss, ECF Nos. 57 and 59, filed by Third-Party Defendants Embroytech Laboratories Inc. ("Embryotech") and Hamilton Thorne LTD ("Hamilton Thorne") against Third-Party Plaintiff CooperSurgical, Inc. ("CooperSurgical"). *See* Third-Party Compl., ECF No. 46. For the reasons explained below, the Court GRANTS Third-Party Defendants' Motions, ECF Nos. 57 and 59.

Page 1 – OPINION AND ORDER

## PROCEDURAL HISTORY

In November 2023, Plaintiffs CLF 007 and CLF 008, a married couple who reside in Oregon, underwent an in vitro fertilization ("IVF") procedure in Oregon. Compl. ¶¶ 9, 10, 18, 45, 46, ECF No. 1. During that procedure Plaintiffs' fifteen fertilized eggs were placed in an embryo culture media that had been manufactured and distributed to Oregon fertility clinics by Defendant CooperSurgical and which was later found to be deficient in magnesium. *Id.* ¶¶ 51, 59–62. Plaintiffs' fertilized embryos were damaged or destroyed. *Id.* ¶¶ 45–51, 85, 86. Plaintiffs allege that the defective culture media was responsible. *Id.* ¶¶ 2, 51.

On June 24, 2024, Plaintiffs filed suit against CooperSurgical, alleging strict products liability, negligence, gross negligence, negligent failure to recall, and unjust enrichment claims. *See* Compl; Opinion & Order, ECF No. 36.

On May 8, 2025, CooperSurgical filed a third-party complaint against Embryotech and parent company Hamilton Thorne ("Third-Party Defendants") seeking Indemnification (First Claim), and Contribution under ORS 31.600 and 31.800 (Second Claim). *See* Third-Party Compl.

## BACKGROUND

CooperSurgical is incorporated in Delaware with its principal place of business in Connecticut. Third-Party Compl. ¶ 4. Embryotech is incorporated in Delaware corporation with its principal place of business in Massachusetts. *Id.* ¶ 5. Hamilton Thorne is a Canadian corporation with its principal place of business in Massachusetts. *Id.* ¶ 6. Hamiton Thorne is the parent company of subsidiary Embryotech. HT Mot. at 1, ECF No. 57.

Page 2 – OPINION AND ORDER

"Embryotech is a laboratory that provides services to the assisted reproductive technologies industry, holding itself out to the general public as an ISO certified laboratory that provides the 'latest quality control assays.'" Third-Party Comp. ¶ 15. CooperSurgical and Embryotech entered into Quality Agreement dated January 2023 (the "Agreement") in which Embryotech agreed to test the CooperSurgical embryo culture media with mouse embryos to ensure that the culture media "was suitable for use with human embryos in IVF clinics." *Id.* ¶¶ 34, 36, 37; Yoshida Decl. ¶ 3, Ex. B, ("Quality Agreement Between Embryotech Laboratories, Inc. and CooperSurgical, Inc."), ECF No. 58-3.

CooperSurgical alleges that on October 18, 2023, it sent three lots of the culture media at issue in this case to Embryotech for testing. *Id.* ¶ 46. CooperSurgical alleges that Embryotech conducted the required testing on October 23, 2023 and issued three Certificates of Analysis "represent[ing] to CooperSurgical that 95% to 100% of the mouse embryos developed from 1-cell to the expanded blastocyst stage within 96 hours, as required[,] and that each of the three samples for each of the three lots were 'Pass/Fail = **Pass**.'" *Id.* ¶ 47 (emphasis in original). CooperSurgical alleges that "[i]n issuing the Certificates of Analysis for the three [culture media] lots at issue to CooperSurgical, [Embryotech] certified that [it] had adhered to the stringent quality control procedures required by the 2023 Quality Agreement and followed the precise methods and procedures that were detailed in multiple standard operating procedures." *Id.* ¶ 48.

CooperSurgical alleges that it later learned that the culture media "did not meet specification, was not suitable for use in IVF clinics, and that [Embryotech] tested the [culture media lots] improperly." *Id.* ¶ 52. CooperSurgical alleges that '[t]he failure to comply with the contracted processes led to [Embryotech] issuing false and misleading Certificates of Analysis[,]' and that but for the improper testing and "false and misleading Certificates of Analysis[,]" *id.* ¶ 66, CooperSurgical would not have released "the three lots of embryo culture media that Plaintiffs allege were responsible for their claimed injuries[,]" *id.* ¶ 67.

## LEGAL STANDARD

When faced with a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (alteration normalized). But where, as here, the court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of the jurisdictional facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Uncontroverted allegations in the plaintiff's complaint must be taken as true[,]" and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* at 1015; *see also Oregon Int'l Airfreight Co. v. Bassano*, No. 3:21-cv-01480-SB, 2022 WL 2068755, at *3 (D. Or. May 16, 2022) ("[T]he court must resolve any conflicts over statements contained in declarations in the plaintiff's favor[.]").

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot*, 780 F.3d at 1211. Oregon's long-arm statute is co-extensive with constitutional standards, so this Court need only determine whether its exercise of personal jurisdiction is consistent with constitutional due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990); Or. R. Civ. P. 4L; *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 384 (1982). A federal court's exercise of personal jurisdiction satisfies due process where a defendant has "certain minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Courts recognize two forms of personal jurisdiction: (1) general or "all-purpose" personal jurisdiction and (2) specific or "case-linked" personal jurisdiction. *Great W. Capital, LLC v. Payne*, No. 3:22-cv-00768-IM, 2023 WL 8600536, at *3 (D. Or. Nov. 28, 2023) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).

"Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim." *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

## DISCUSSION

CooperSurgical seeks indemnification and contribution from Third-Party Defendants for damages asserted by CLF 007 and CLF 008, which CooperSurgical alleges resulted from Embryotech's failure to comply with the contracted culture media testing and certification procedures. Third-Party Compl. ¶¶ 66–67, 68–77. CooperSurgical alleges that Embryotech improperly tested the embryo culture media at issue and that it falsely represented to CooperSurgical that it had properly tested the media and that the media had "passed." *Id.* ¶¶ 65–67. CooperSurgical also seeks to impute Embryotech's "actions and inactions" to parent company Hamilton Thorne based on an alter ego theory. *Id.* ¶ 33.

I.  *Judicial Notice*

CooperSurgical filed a request for judicial notice. *See* ECF No. 67. Third-Party Defendants also filed a request for judicial notice and seek to incorporate the Agreement by reference. *See* ECF Nos. 58, 60.

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). A fact not subject to reasonable dispute is a fact that is "'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms

the basis of the plaintiff's claim[,]" *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and "the authenticity of [the document] is not contested[,]" *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *as amended* (July 28, 1998). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

A.   *CooperSurgical*

CooperSurgical asks the Court to take judicial notice of five documents:

(1) an archived article from the Centers for Disease Control and Prevention's website, entitled "State-Specific Assisted Reproductive Technology Surveillance";

(2) Embryotech Laboratories, Inc.'s website's "About Embryotech" page;

(3) Embryotech Laboratories, Inc.'s website's "Contract Research & Consulting" page;

(4) Embryotech Laboratories, Inc.'s website including "Request A Quote" interactive form;

(5) Embryotech Laboratories, Inc.'s website's "Upcoming Events" page listing "Past Events" information.

ECF No. 67. The Court takes notice of the archived article from the CDC website because it is a record from a government website, the accuracy of which cannot reasonably be questioned. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (explaining that a court may take judicial notice of a government publication). But courts generally will not take judicial notice of documents on non-government websites, because documents from non-government websites "are not inherently reliable" and are "subject to reasonable dispute." *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032–33 (N.D. Cal. 2018) (citing *Ladore v. Sony*

*Comput. Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1074 (N.D. Cal. 2014)) (rejecting request to judicially notice corporate terms of service because moving party "cannot establish that [the] documents' 'accuracy cannot reasonably be questioned.'"). But because Third-Party Defendants do not dispute the documents' authenticity, the Court will take judicial notice of them to decide the motions at issue.

B.    *Third-Party Defendants*

Third-Party Defendants asks the Court to take judicial notice of three documents and to incorporate the Agreement by reference:

(1) Exhibit A, a copy of a Certificate of No Record issued by the Oregon Secretary of State;

(2) Exhibit B, a copy of the Quality Agreement Between Embryotech Laboratories Inc. and CooperSurgical, Inc and its Affiliates, dated January 31, 2023;

(3) Exhibit C, copy of the Response of Interested Parties The Cooper Companies, Inc., and CooperSurgical, Inc., in Opposition to Plaintiffs A.B., C.D., F.G., and H.I.'s Motion to Transfer and Centralize Related Actions for Coordinated or Consolidated Pretrial Proceedings, Doc. 15, *In Re: The Cooper Companies, Inc., In Vitro Fertilization Global Culture Media Products Liability Litig.*, MDL No. 3122 (United States Judicial Panel on Multidistrict Litigation, July 23, 2024).

(4) a copy of copy of CooperSurgical, Inc.'s Second Amended Complaint, *CooperSurgical, Inc. v. Embryotech Laboratories Inc., et al.*, Civil Action No. 2477CV00805 (Essex, Mass. Super. Ct., Apr. 8, 2025).

Yoshida Decl., ECF Nos. 58, 60. The Court takes notice of the Certificate of No Record issued by the Oregon Secretary because it is a government record. The Court incorporates by reference the Agreement because CooperSurgical refers to it extensively in its third-party Complaint, it is the basis of the parties' relationship, and it gives rise to the claims at issue. Finally, the Court takes notice of the existence

of the remaining court documents. *See In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (explaining that the court "may take judicial notice of the existence of unrelated court documents . . . it will not take judicial notice of such documents for the truth of the matter asserted therein").

II.     *Personal Jurisdiction*

Third-Party Defendants move to dismiss the claims against them for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The parties agree that Third-Party Defendants are not subject to general personal jurisdiction in Oregon and that only specific jurisdiction is at issue. *See* Pl. Resp. at 7 n.5; Def. Reply at 1, ECF No. 68.

Embryotech and Hamilton Thorne contend that they are not subject to specific jurisdiction in Oregon because they lack the requisite minimum contacts with Oregon. HT Mot. at 7, ECF No. 57; Embryotech Mot. at 10, ECF No. 59.

Specific or case-linked jurisdiction "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 287 (2014)). The Ninth Circuit has established a three-prong analysis to determine whether a court may exercise specific jurisdiction over a nonresident defendant:

> (1) the defendant must either purposefully direct [its] activities toward the forum or purposefully avail[] [it]self of the privileges of conducting activities in the forum;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

Page 9 – OPINION AND ORDER

*Axiom Foods,* 874 F.3d at 1068 (internal citation and quotation marks omitted). The plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff succeeds on the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### A.     *Embryotech*

CooperSurgical alleges that Embryotech breached the Agreement by failing to properly test the culture media and by misrepresenting that it had properly tested the culture media when it had not. Third-Party Compl. ¶¶ 66–67. CooperSurgical's claims for indemnity and contribution arise from the alleged breach.

#### 1.     *Purposeful Availment*

Under the first prong of the Ninth Circuit specific jurisdiction analysis, a plaintiff must show that the defendant either purposefully directed its activities toward the forum or purposefully availed itself of the privileges of conducting activities in the forum. *Axiom Foods*, 874 F.3d at 1068.

The test for specific personal jurisdiction depends on the nature of a plaintiff's claims. For claims sounding in contract, the Ninth Circuit "generally appl[ies] a 'purposeful availment' analysis and ask[s] whether a defendant has 'purposefully avail[ed] [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Picot*, 780 F.3d at 1212 (quoting *Schwarzenegger*, 374 F.3d at 802). For claims sounding in tort, the Ninth Circuit applies a "purposeful direction" analysis and asks whether "the defendant has

Page 10 – OPINION AND ORDER

directed [its] actions at the forum state, even if those actions took place elsewhere." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802–03). But "[w]here a plaintiff's tort and other claims arise out of an agreement, they are subject to the purposeful availment analysis that applies to contract claims." *NxSystems, Inc. v. Monterey Cnty. Bank*, No. 3:12-CV-00905-ST, 2012 WL 4093932, at *6 (D. Or. Sept. 17, 2012) (citing *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) ("Although some of [plaintiff]'s claims sound in tort, all arise out of [plaintiff]'s contractual relationship with the defendants.")); *see also HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 665 (9th Cir. 2011) (applying purposeful availment analysis to entire suit because fraud-based claims were "merely the representation in the contract that gave rise to the breach").

The parties agree that CooperSurgical's indemnity and contribution claims arise out of an alleged breach of the Agreement and thus arise out of the parties' contractual relationship. For that reason, the Ninth Circuit's purposeful availment test applies.

Under the purposeful availment test, the minimum contacts analysis focuses on whether a defendant purposefully availed itself of the privilege of conducting business in the forum state through the contract at issue. *Picot*, 780 F.3d at 1212. Courts consider "evidence of the defendant's actions in the forum, such as executing or performing a contract there[,]" *Schwarzeneggar*, 374 F.3d at 802, and "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

Page 11 – OPINION AND ORDER

Embryotech maintains that it did not purposefully avail itself of Oregon law or the benefits of conducting business in Oregon through the Agreement because:

(1) Embryotech is not registered to do business in Oregon, Embryotech Mot. at 13, ECF No. 59 (citing Ex. A, Oregon Secretary of State Certificate of No Record);

(2) Neither party to the 2023 Quality Agreement is a resident of Oregon, *id.*;

(3) The Agreement was negotiated, signed, performed, and allegedly breached completely outside of Oregon, *id.* (citing Ex. B, the Agreement);

(4) The only CooperSurgical sites involved in the Agreement are outside of Oregon, *id.* at 13–14; and

(5) The Agreement does not contain any Oregon choice of law provision, *id.* at 14.

Not only are no parties to the Agreement at home in Oregon, CooperSurgical offers no evidence that contract formation—including any prior business negotiations—was connected to Oregon. The contract's performance also took place entirely outside of Oregon and without any connection to Oregon. Under the Agreement's terms, CooperSurgical sent culture media samples from Costa Rica to Embryotech's testing facility in Massachusetts, where Embryotech tested the culture media. *Id.* at 14 (citing Third-Party Compl. ¶¶ 7, 34–47; Ex. B, the Agreement). Third-Party Defendants maintain that Embyrotech's only involvement with the product was testing and that Embryotech had no "involvement, direction, or control over the design, marketing, manufacture, sale, or distribution of the culture media or where CooperSurgical would sell CooperSurgical's media." *Id.* at 6 (citing Ex. B, the Agreement; Third-Party Compl. ¶¶ 9, 15, 34). CooperSurgical offers no evidence or argument to the contrary.

Page 12 – OPINION AND ORDER

CooperSurgical contends that Third-Party Defendants are subject to personal jurisdiction in Oregon under a stream-of-commerce-plus theory. Under a stream of commerce theory, "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state," even if the defendant is "aware[ ] that the stream of commerce may or will sweep the product into the forum state." *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 112 (1987)). Under the stream-of-commerce-plus theory, however, a defendant may be subject to specific personal jurisdiction in the forum where a defendant both places a product into the stream of commerce and engages in "[a]dditional conduct" that "may indicate an intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 112

CooperSurgical argues that Third-Party Defendants placed a product into the stream of commerce by testing the culture media because they "were aware that the culture media they tested was distributed nationwide to IVF clinics, including those in Oregon[,]" Resp. at 13, and they "should have anticipated and foreseen being haled" into an Oregon court in the case of a claim arising from faulty culture media, *id.* at 12. CooperSurgical contends that Embryotech's awareness that the tested product would reach Oregon combined with Embryotech's interactive website—presumably viewable by Oregon residents—satisfies the stream-of-commerce-plus test and constitutes sufficient contacts to justify the exercise of specific jurisdiction in Oregon. *Id.* at 14.

CooperSurgical confuses the purposeful availment and purposeful direction analyses. "[Courts] often use the phrase 'purposeful availment' in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts." *Schwarzenegger*, 374 F.3d at 801. "A purposeful availment analysis is most often used in suits sounding in contract." *Id.*; *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 817 (9th Cir. 1988) (distinguishing purposeful direction precedents where "personal jurisdiction is sought on a contract claim, not on a tort claim").

CooperSurgical thus applies the wrong test. Further, even if purposeful direction were the correct test for claims arising from contract, CooperSurgical does not show that Third-Party Defendants had sufficient contacts with Oregon to justify the exercise of specific personal jurisdiction.

First, CooperSurgical does not show that Embryotech, as a product-tester, placed a product in the stream of commerce. Embryotech had no role in designing, manufacturing, or distributing the product or any part of it. In contrast, the *Asahi* defendant, unlike Embryotech, "manufactured, sold, and delivered" tire valve components to a foreign manufacturer that incorporated the valves into allegedly defective tire tubes that were then shipped to and sold in the forum state. *Asahi*, 480 U.S. at 105–06. Even so, the Court held that the *Asahi* defendant lacked minimum contacts with the forum state because "awareness that the stream of commerce may or will sweep the product into the forum state" was insufficient to create minimum contacts. *Id.* at 112. And the *Asahi* defendant "did not create, control, or employ the

Page 14 – OPINION AND ORDER

distribution system that brought its [product] to [the forum state]" or "design[] its product in anticipation of sales in [the forum state]." *Id.* at 112–13.

Here, the connection between Embryotech and Oregon is even more attenuated because Embryotech merely tested the product—Embryotech didn't design, manufacture, or distribute any part of it. Other courts have found a lack of personal jurisdiction where a testing company "does not place [a] product into the stream of commerce" and instead only "conduct[s] the testing requested by [the manufacturer]," "report[s] the results of the testing to [the manufacturer]," and then "ha[s] no further involvement with the product." *Netolicky v. McKeon Products, Inc.*, No. 1:12-CV-01429-SEB-DKL, 2013 WL 12303134, at *3 (S.D. Ind. May 21, 2013); *see also Doan v. Consumer Testing Lab'ys (Far E.) Ltd.*, 105 F.3d 654, 1996 WL 762865, at *3 (5th Cir. 1996) (finding no personal jurisdiction over defendants that provided pre-market quality testing services to Walmart because "[a]lthough the testing results . . . may in fact influence Walmart's decision to place a product into the stream of commerce, the [testing companies] themselves do not purposefully direct their activities toward [the forum state] sufficiently to confer specific personal jurisdiction"); *Angel's Dream, LLC v. Toledo Jet Ctr., LLC*, 721 F. Supp. 3d 601, 614–15 (N.D. Ohio 2024) (finding no personal jurisdiction over aircraft inspection services provider for services that were provided outside the forum state because services do "not travel, as does a product"). Indeed, the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the unilateral activity of another party or a third person."

Page 15 – OPINION AND ORDER

*Burger King,* 471 U.S. at 475 (1985); *see also Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("[A] person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.").

Second, Embryotech's interactive website—which includes a contract-research-and-consulting page, a request-a-quote form, and an upcoming-events page—also does not support the exercise of specific personal jurisdiction because there is no evidence that the website expressly aimed at Oregon and was related to the Agreement between CooperSurgical and Embryotech. *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023) ("In some cases, the operators of a website can be said to have 'expressly aimed' at a forum where a website with national viewership and scope appeals to, and profits from, an audience in a particular state.") (internal citation and quotation marks omitted).

In sum, CooperSurgical applies the wrong test. Under the correct test, the contract-centered purposeful availment test, CooperSurgical provides no evidence that Embryotech had minimum contacts in Oregon related to the Agreement sufficient to justify the exercise of specific jurisdiction in Oregon. Under the improper test, the tort-based purposeful direction test, CooperSurgical provides no evidence that Embryotech placed a product in the stream of commerce or that the existence of its interactive website conferred minimum contacts in Oregon related to the Agreement sufficient to justify the exercise of specific jurisdiction in Oregon. For

Page 16 – OPINION AND ORDER

these reasons, CooperSurgical fails to carry its burden as to the first specific jurisdiction prong.

### 2. *Claims Arise out of Contacts*

CooperSurgical also fails to carry its burden as to the second specific jurisdiction prong. That prong requires that a plaintiff show that its claims arise out of or relate to the defendant's forum-related activities. *Axiom Foods*, 874 F.3d at 1068. That is, "[t]here must be an affiliation between the forum and the underlying controversy." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U. S. 255, 264 (2017). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

Here, the underlying controversy is the alleged breach of contract. As explained above, CooperSurgical is not able to show that its contract claims against Embryotech arise out of any Embryotech contacts with Oregon.

In sum, CooperSurgical has not prevailed on the first two prongs of the Ninth Circuit's specific personal jurisdiction analysis and has therefore not made a *prima facie* showing that Embryotech is subject to specific personal jurisdiction in Oregon. Accordingly, CooperSurgical cannot sue Embryotech in Oregon for claims arising from the alleged breach of contract.

### B. *Hamilton Thorne*

CooperSurgical contends that Embryotech's parent company Hamilton Thorne is subject to specific personal jurisdiction in Oregon because it is Embryotech's alter

Page 17 – OPINION AND ORDER

ego. Third-Party Compl. ¶ 33; Pl. Resp. at 17. The Court need not conduct a specific jurisdiction analysis for Hamilton Throne because CooperSurgical has not made a *prima facie* showing that Embryotech is subject to specific personal jurisdiction in Oregon.

III.    *Jurisdictional Discovery*

CooperSurgical requests the opportunity to engage in jurisdictional discovery "including discovery into any other factors for the stream of commerce theory." Pl. Resp. at 14. "[Jurisdictional] discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). But "a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction[.]'" *Id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). Further, a court need not permit such discovery if "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)); *see also Boschetto*, 539 F.3d at 1020 (denying jurisdictional discovery because it was "based on little more than a hunch that it might yield jurisdictionally relevant facts").

Here, the Court denies jurisdictional discovery because CooperSurgical's claims of personal jurisdiction as to Third-Party Defendants are threadbare and speculative. Further, although CooperSurgical does not seek leave to amend and although any amendment is likely futile, the Court grants CooperSurgical leave to amend to add new jurisdictional allegations.

## CONCLUSION

For the reasons explained, Third-Party Defendants' Motions, ECF Nos. 57 and 59, are GRANTED. The Court grants CooperSurgical leave to amend its complaint to add new jurisdictional allegations. Any such amended complaint shall be filed 21 days from the date of this Order.

It is so ORDERED and DATED this   5th   day of February 2026.

           /s/Ann Aiken
           ANN AIKEN
           United States District Judge